FILED by _____ D.C.

OCT 0 2 2012

STEVEN M. LARIMORE
CLERK U. S. DIST. CT
S. D. of FLA. – MIAMI

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### Case No. _____

12-20757

CR-MARTINEZ / McALILEY

18 U.S.C. § 1349
18 U.S.C. § 1343
18 U.S.C. § 1347
18 U.S.C. § 371
42 U.S.C. § 1320a-7b(b)(1)
42 U.S.C. § 1320a-7b(b)(2)
18 U.S.C. § 2
18 U.S.C. § 981
18 U.S.C. § 982

**UNITED STATES OF AMERICA**

**vs.**

**KAREN KALLEN-ZURY,
DAISY MILLER,
CHRISTIAN COLOMA,
MICHELE PETRIE,
and
GLORIA HIMMONS,**

**Defendants.**

_____/

## INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At all times relevant to this Indictment,

1.      The Medicare Program ("Medicare") was a federal health care program providing

benefits to persons who are over the age of sixty-five or disabled.

2.      Medicare was a "health care benefit program," as defined by Title 18, United

States Code, Section 24(b).

3.      Medicare is administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services. Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

4.      The Medicare program covered reimbursement for inpatient hospitalization treatment for mental illness ("Inpatient Treatment") and also covered billings for outpatient psychiatric treatment for mental illness ("Outpatient Treatment") that is provided in connection with a psychiatric hospital.

5.      For a psychiatric hospital to properly bill and be paid by Medicare for Inpatient Treatment and/or Outpatient Treatment, the patient must, among other things, qualify for the treatment under Medicare's established rules and regulations.  The treatment must be rendered according to Medicare's rules and regulations, and certain documents must be completed before a claim is submitted for reimbursement to Medicare.  Specifically, for a Psychiatric Hospital to properly bill and be paid by Medicare for Inpatient Treatment, among other things:  (1) the patient must (a) not be able to be actively managed at a lower level of care, and (b) the patient must require 24-hour, active treatment; (2) the treatment (a) must be tailored to the specific needs of the individual patient through a written treatment plan developed by the physician and staff; (b) must be administered on a 24-hour basis; (c) must be structured and intensive; (d) requires the treating physician to have periodic consultations and conferences with the treating therapists about the patient; (e) requires the treating physician to review the patient's medical record; (f) requires the treating physician to see the patient, face-to-face, at least once a week and typically five times per week; and (g) requires the physician to supervise the patient's treatment on a daily basis; and (3) the documentation must include: (a) a physician's certification justifying the patient's admission to a Psychiatric Hospital; (b) a qualifying psychiatric diagnosis; (c) an initial

2

psychiatric evaluation; (d) progress notes from treating personnel, including the treating physician; (e) physician's orders; (f) a treatment plan; and (g) a physician recertification, if applicable.

6.     For a Psychiatric Hospital to properly bill and be paid by Medicare for Outpatient Treatment, among other things:  (1) the patient must have a qualifying psychiatric diagnosis; (2) the treatment (a) must be tailored to the individual patient and established by the physician; (b) must be periodically evaluated by the physician; (c) requires the physician to periodically consult with the treating therapists and staff; (d) requires the physician to review the patient's medical records; (e) requires the physician to supervise and direct the treating therapists; and (f) requires the physician to periodically see the patient; and (3) the documentation must state (a) the patient's symptoms; (b) the patient's medical history; (c) the results of procedures and tests; and (d) the patient's ability to participate in, and benefit from, treatment.

7.     If any of the requirements identified in paragraphs 5 and 6 of the General Allegations section of this Indictment were not satisfied, Medicare would not pay the claim.

8.     In addition, Medicare would not pay claims procured through bribes or kickbacks. Nor would Medicare pay claims where the required documentation for the purported service rendered was not completed at the time the claim was submitted to Medicare for payment.

9.     Inpatient Treatment was billed to Medicare's Part A Trust Fund ("Medicare Part A").  Medicare Part A is administered in Florida by a contractor which, pursuant to contract with the United States Department of Health of Human Services, receives, adjudicates, and pays Medicare Part A claims submitted to it by psychiatric hospitals for Inpatient Treatment.

10.     Outpatient Treatment was billed to Medicare's Part B Trust Fund ("Medicare Part B").  Medicare Part B is administered in Florida by a contractor, which, pursuant to contract with

the United States Department of Health of Human Services, receives, adjudicates and pays Medicare Part B claims submitted to it by psychiatric hospitals for Outpatient Treatment.

11.    Medicare regulations required certified billing entities providing Inpatient Treatment and Outpatient Treatment to Medicare patients to maintain, for at least six years, complete and accurate medical records reflecting the medical assessment and diagnoses of their patients, as well as records documenting actual treatment of the patients to whom services were provided and for whom claims for reimbursement were submitted.

12.    Medicare regulations required inpatient psychiatric hospitals certified to bill Medicare to submit reports to Medicare ("Cost Reports") which, among other things, were used by Medicare to determine how much, if any, additional compensation Medicare owed to the inpatient psychiatric hospital for costs that were incurred by the hospital during the preceding fiscal year and compensable under Medicare's guidelines.

13.    Medicare regulations required inpatient psychiatric hospitals certified to bill Medicare to send reports to Medicare ("Credit Balance Reports") certifying how much, if at all, Medicare had overpaid the certified billing entity the previous fiscal quarter for services rendered.    If the Credit Balance Reports showed that Medicare had overpaid an inpatient psychiatric hospital, the inpatient psychiatric hospital was required to re-pay the amount of the overpayment to Medicare.

## RELEVANT ENTITIES AND DEFENDANTS

14.    Hollywood Pavilion, LLC ("HP") was a Florida corporation established in at least 2001 and headquartered in Hollywood, Florida.    HP maintained at least two different locations – one purporting to offer Inpatient Treatment (the "Inpatient Facility") and the other purporting to offer Outpatient Treatment (the "Outpatient Facility").    From 2003 to September 2012, HP billed

4

Medicare for mental health services, including but limited to Inpatient Treatment and Outpatient Treatment, at various times.

15.     Defendant **KAREN KALLEN-ZURY**, a resident of Broward County, was the Chief Executive Officer and a registered agent of HP.

16.     Defendant **DAISY MILLER**, a resident of Broward County, was the Chief Clinical Officer at HP's Inpatient Facility.

17.     Defendant **CHRISTIAN COLOMA**, a resident of Broward County, was a physical therapy director associated with HP and also handled certain administrative matters for HP.

18.     Defendant **MICHELE PETRIE**, a resident of Broward County, was the Director of HP's Outpatient Facility.

19.     Defendant **GLORIA HIMMONS**, a resident of Bullock County, Alabama, was paid money by HP to refer Medicare beneficiaries (a "Patient Broker") to HP.

## COUNT 1
### Conspiracy to Commit Health Care Fraud and Wire Fraud
### (18 U.S.C. § 1349)

1.     Paragraphs 1 through 19 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.     From in or around at least April 2003 to in or around at least September 2012, in Miami-Dade and Broward Counties in the Southern District of Florida and elsewhere, the defendants,

**KAREN KALLEN-ZURY,**
**DAISY MILLER,**
**and**
**MICHELE PETRIE,**

5

did knowingly and willfully that is, with the intent to further the objects of the conspiracy, combine, conspire, confederate, and agree with others known and unknown to the Grand Jury to commit certain offenses against the United States, namely:

      a.    to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347; and

      b.    to knowingly and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations and promises were false and fraudulent when made, and did knowingly transmit and cause to be transmitted, by means of wire communication in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

## Purpose of the Conspiracy

3.    It was a purpose of the conspiracy for **KAREN KALLEN-ZURY, DAISY MILLER, MICHELE PETRIE**, and their co-conspirators, to unlawfully enrich themselves by, among other things:  (a) submitting false and fraudulent claims to Medicare through HP for claims based on bribes and kickbacks; (b) submitting false and fraudulent claims to Medicare through HP for services that were medically unnecessary, that were not eligible for Medicare

reimbursement, and that were never provided; (c) offering and paying kickbacks and bribes to individuals who referred Medicare beneficiaries to attend HP's Inpatient Facility and Outpatient Facility, and who were not eligible to receive such services under Medicare's guidelines; (d) concealing the submission of false and fraudulent claims to Medicare, the receipt and transfer of the proceeds from the fraud, and the payment of kickbacks and bribes to Patient Brokers; and (e) diverting proceeds of the fraud for the personal use and benefit of the defendants and their co-conspirators in the form of compensation and other remuneration.

### Manner and Means of the Conspiracy

The manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among other things:

4.     From in or around at least April 2003 to in or around at least September 2012, **KAREN-KALLEN ZURY, DAISY MILLER,** and **MICHELE PETRIE,** and others devised and participated in a scheme to pay illegal bribes and kickbacks to the Patient Brokers in return for referring Medicare beneficiaries to HP so that HP could bill Medicare for Inpatient Treatment and/or Outpatient Treatment on behalf of those Medicare beneficiaries.

5.     In or around July 2004, **KAREN KALLEN-ZURY** submitted, and caused to be submitted, documents to Medicare representing that **KALLEN-ZURY** would abide by all applicable Medicare regulations. These documents plainly stated that payment of a claim by Medicare was conditioned on compliance with the Anti-Kickback Statute – that is, a claim would be false and would not be paid if it was submitted on behalf of a beneficiary who was procured through bribes and kickbacks.

6.     **KAREN KALLEN-ZURY, DAISY MILLER,** and **MICHELE PETRIE** submitted and caused to be submitted claims for Medicare beneficiaries who were procured

7

through bribes and kickbacks.

7.      In order to conceal the payment of bribes and kickbacks at HP from Medicare and state regulators, **KAREN KALLEN-ZURY** and others created and caused to be created false and fraudulent contracts between HP and certain Patient Brokers.  In these bogus contracts, the Patient Brokers purported to provide legitimate services to HP, including but not limited to case management services and marketing services.  In fact, however, the Patient Brokers would be paid illegal bribes and kickbacks by HP to refer Medicare beneficiaries to HP for mental health treatment.

8.      In order to further conceal the payment of bribes and kickbacks at HP from Medicare and state regulators, and at the direction of **KAREN KALLEN-ZURY** and others, certain Patient Brokers were instructed to create false and fraudulent invoices which were submitted to HP for payment.  These false invoices would purport to document legitimate services rendered by certain Patient Brokers, including case management and marketing services. The purpose of these false and fraudulent invoices was to deceive Medicare, state regulators, and others into believing that the Patient Brokers were rendering legitimate services to HP on a regular basis.

9.      In periodic Cost Reports distributed to Medicare by HP, and to further conceal the payment of bribes and kickbacks from Medicare and to unlawfully enrich herself and others, **KAREN KALLEN-ZURY** caused to be certified Cost Reports to Medicare identifying certain expenses as reimbursable Medicare expenses when, in fact, these expenses were kickback payments to Patient Brokers.

10.      Additionally, in periodic Cost Reports distributed to Medicare by HP, **KAREN KALLEN-ZURY** and others certified and caused to be certified documents in which certain

payments to **KALLEN-ZURY** and entities affiliated with **KALLEN-ZURY** were classified as Medicare reimbursable expenses when, in fact, these payments were not reimbursable Medicare expenses.

11.     Patient Brokers working with HP would refer Medicare beneficiaries to HP's Inpatient Facility and HP's Outpatient Facility who did not qualify for Inpatient Treatment and/or Outpatient Treatment under Medicare's established standards. **KAREN KALLEN-ZURY, DAISY MILLER, MICHELE PETRIE**, and others caused HP to admit these unqualified Medicare beneficiaries to the Inpatient Facility and the Outpatient Facility so that HP could bill Medicare on behalf of these beneficiaries.

12.     **KAREN KALLEN-ZURY, DAISY MILLER, MICHELE PETRIE**, and others at HP billed and caused Medicare to be billed for Inpatient Treatment and Outpatient Treatment for services that were never rendered and for services that did not qualify for reimbursement by Medicare.

13.     To conceal the fraud scheme, **KAREN KALLEN-ZURY, DAISY MILLER,** and **MICHELE PETRIE** caused false, inaccurate, and misleading information to be included in patient files and related documents for Medicare beneficiaries who were purportedly receiving mental health treatment at HP.

14.     **KAREN KALLEN-ZURY, DAISY MILLER, MICHELE PETRIE**, and others caused the length of patient stays at HP to be based on obtaining the highest reimbursement from Medicare rather than on actual patient medical needs.

15.     In furtherance of the fraud scheme, **KAREN KALLEN-ZURY**, along with others, certified and caused to be certified Credit Balance Reports to Medicare stating that Medicare had not overpaid HP for services rendered when, in fact, **KALLEN-ZURY** knew

Medicare had overpaid for certain services rendered.

       16.     After learning of the government's investigation, and in an effort to conceal their fraudulent scheme, **KAREN KALLEN-ZURY, MICHELE PETRIE,** and others at HP, among other things, would cause false, inaccurate, and misleading information to be added to patient files and related patient documents well after claims for purported patient treatment had been submitted to Medicare.

       17.     From in or around at least April 2003 to in or around at least September 2012, **KAREN-KALLEN ZURY, DAISY MILLER,** and **MICHELE PETRIE** caused claims to be submitted to Medicare for services purportedly provided by HP in an amount exceeding $67 million.

      All in violation of Title 18, United States Code, Section 1349.

### COUNTS 2-6
### Wire Fraud
### (18 U.S.C. §§ 1343 and 2)

       1.     Paragraphs 1 through 19 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

       2.     On or about the dates set forth below, in Miami-Dade and Broward Counties, in the Southern District of Florida and elsewhere, defendants,

<strong>KAREN KALLEN-ZURY,<br>DAISY MILLER, and<br>MICHELE PETRIE,</strong>

did knowingly and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and did knowingly transmit and cause to be

10

transmitted, by means of wire communication in interstate commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice.

### Purpose of the Scheme and Artifice

3.      It was a purpose of the scheme and artifice for **KAREN KALLEN-ZURY, DAISY MILLER, MICHELE PETRIE**, and their accomplices to unlawfully enrich themselves by, among other things:  (a) submitting false and fraudulent claims to Medicare through HP for claims based on bribes and kickbacks; (b) submitting false and fraudulent claims to Medicare through HP for services that were medically unnecessary, that were not eligible for Medicare reimbursement, and that were never provided; (c) offering and paying kickbacks and bribes to individuals who referred Medicare beneficiaries to attend HP's Inpatient Facility and Outpatient Facility, and who were not eligible to receive such services under Medicare's guidelines; (d) misrepresenting facts to Medicare about HP's costs and expenses; (e) concealing the submission of false and fraudulent claims to Medicare, the receipt and transfer of the proceeds from the fraud, and the payment of kickbacks and bribes to Patient Brokers; and (f) diverting proceeds of the fraud for the personal use and benefit of the defendants and their accomplices in the form of compensation and other remuneration.

### The Scheme and Artifice

4.      The allegations contained in paragraphs 4-17 of the Manner and Means section of Count 1 of this Indictment are realleged and incorporated by reference as though fully set forth herein as a description of the scheme and artifice.

### Acts in Execution of or Attempted Execution of the Scheme and Artifice

5.      On or about the dates set forth below, in Miami-Dade and Broward Counties, in the Southern District of Florida and elsewhere, the defendants **KAREN KALLEN-ZURY,**

11

**DAISY MILLER**, and **MICHELE PETRIE** did knowingly and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud, as described above, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations and promises were false and fraudulent when made, and did knowingly transmit and cause to be transmitted, by means of wire communication in interstate commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, as set forth below:

| Count | Approximate Date | Description |
|---|---|---|
| 2 | December 3, 2007 | Electronic funds transfer of approximately $195,066 to Bank Atlantic in Ft. Lauderdale, Florida, and processed in Omaha, Nebraska. |
| 3 | February 20, 2008 | Electronic funds transfer of approximately $224,350 to Bank Atlantic in Ft. Lauderdale, Florida, and processed in Omaha, Nebraska. |
| 4 | March 11, 2008 | Electronic funds transfer of approximately $246,239 to Bank Atlantic in Ft. Lauderdale, Florida, and processed in Omaha, Nebraska. |
| 5 | June 24, 2008 | Electronic funds transfer of approximately $215,733 to Bank Atlantic in Ft. Lauderdale, Florida, and processed in Omaha, Nebraska. |
| 6 | June 26, 2008 | Electronic funds transfer of approximately $135,707 to Bank Atlantic in Ft. Lauderdale, Florida, and processed in Omaha, Nebraska. |

In violation of Title 18, United States Code, Sections 1343 and 2.

### COUNTS 7-8
### Health Care Fraud
### (18 U.S.C. §§ 1347 and 2)

1.    Paragraphs 1 through 19 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.    On or about the dates set forth below, in Miami-Dade and Broward Counties, in the Southern District of Florida and elsewhere, defendants,

**KAREN KALLEN-ZURY and**
**DAISY MILLER,**

in connection with the delivery of and payment for health care benefits, items, and services, did

knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a health

care benefit program affecting commerce, as defined in Title 18, United States Code, Section

24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses,

representations, and promises, money and property owned by, and under the custody and control

of, said health care benefit program.

### Purpose of the Scheme and Artifice

3.     It was a purpose of the scheme and artifice for **KAREN KALLEN-ZURY,**

**DAISY MILLER,** and their accomplices to unlawfully enrich themselves by, among other

things:  (a) submitting false and fraudulent claims to Medicare through HP for claims based on

bribes and kickbacks; (b) submitting false and fraudulent claims to Medicare through HP for

services that were medically unnecessary, that were not eligible for Medicare reimbursement,

and that were never provided; (c) offering and paying kickbacks and bribes to individuals who

referred Medicare beneficiaries to attend HP's Inpatient Facility and Outpatient Facility, and

who were not eligible to receive such services under Medicare's guidelines; (d) misrepresenting

facts to Medicare about HP's costs and expenses; (e) concealing the submission of false and

fraudulent claims to Medicare, the receipt and transfer of the proceeds from the fraud, and the

payment of kickbacks and bribes to Patient Brokers; and (f) diverting proceeds of the fraud for

the personal use and benefit of the defendants and their accomplices in the form of compensation

and other remuneration.

## The Scheme and Artifice

4.      The allegations contained in paragraphs 4-17 of the Manner and Means section of Count 1 of this Indictment are realleged and incorporated by reference as though fully set forth herein as a description of the scheme and artifice.

## Acts in Execution of or Attempted Execution of the Scheme and Artifice

5.      On or about the dates set forth below as to each count, in Miami-Dade and Broward Counties, in the Southern District of Florida and elsewhere, the defendants, **KAREN KALLEN-ZURY** and **DAISY MILLER**, in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, the above-described scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in that the defendants submitted and caused the submission of false and fraudulent Medicare claims, as further described below, representing that HP had provided qualifying psychiatric services to Medicare beneficiaries.

| Count | Approx. Claim Receipt Date | Bene-ficiary Name | Services Billed | Amt. Billed | Claim Number |
|-------|----------------------------|-------------------|-----------------|-------------|--------------|
| 7 | 7/28/2008 | S.M. | Inpatient Psychiatric Services | $15,881 | 2082100533150201 |
| 8 | 11/24/2010 | D.S. | Inpatient Psychiatric Services | $52,869 | 21110301321208NTA01 |

In violation of Title 18, United States Code, Sections 1347 and 2.

## COUNT 9
**Conspiracy to Defraud the United States and to Pay and Receive
Kickbacks in Connection with a Federal Health Care Benefit Program
(18 U.S.C. § 371)**

1.      Paragraphs 1 through 19 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.      From in or around at least April 2003 to in or around at least September 2012, in Miami-Dade and Broward Counties, in the Southern District of Florida and elsewhere, the defendants,

**KAREN KALLEN-ZURY,
CHRISTIAN COLOMA,
DAISY MILLER,
MICHELE PETRIE,
and
GLORIA HIMMONS,**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate and agree with each other and with others, including those known and unknown to the Grand Jury, to commit certain offenses against the United States, namely:

a.      To defraud the United States by impairing, impeding, obstructing, and defeating through deceitful and dishonest means, the lawful government functions of the United States Department of Health and Human Services in its administration and oversight of the Medicare program;

b.      To violate Title 42, United States Code, Section 1320a-7b(b)(2), by knowingly and willfully offering and paying remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind to any person to induce such person to refer an individual to a person for the furnishing and arranging for the furnishing of

15

any item and service for which payment may be made in whole and in part by a Federal health care program, that is, Medicare; and

c.    To violate Title 42, United States Code, Section 1320a-7b(b)(1), by knowingly and willfully soliciting and receiving remuneration, including, kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, in return for referring an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part by a Federal health care program, that is, Medicare.

### Purpose of the Conspiracy

3.    It was a purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by impairing and impeding the lawful functions of the United States Department of Health and Human Services in its administration and oversight of the Medicare program, and to receive and pay bribes and kickbacks in exchange for securing the attendance of Medicare beneficiaries at HP so that HP could bill Medicare for these beneficiaries.

### Manner and Means of the Conspiracy

The manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among other things:

4.    **KAREN KALLEN-ZURY, CHRISTIAN COLOMA, DAISY MILLER, MICHELE PETRIE,** and others arranged for bribes and kickbacks to be paid to Patient Brokers in exchange for Patient Brokers referring Medicare beneficiaries to HP.

5.    **KAREN KALLEN-ZURY, CHRISTIAN COLOMA, DAISY MILLER, MICHELE PETRIE,** and others paid and caused the payment of hundreds of thousands of

dollars in bribes and kickbacks to Patient Brokers in exchange for referring Medicare beneficiaries to HP.

6.      **KAREN KALLEN-ZURY** and others created and caused to be created bogus contracts between HP and certain Patient Brokers in order to disguise the true nature of HP's relationship with the Patient Brokers.

7.      **KAREN KALLEN-ZURY, CHRISTIAN COLOMA,** and others instructed and caused the Patient Brokers to create false and fraudulent invoices, which were submitted to HP in order to disguise the true nature of HP's relationship with, and the payments to, the Patient Brokers.

8.      **GLORIA HIMMONS** was paid bribes and kickbacks by **KAREN KALLEN-ZURY, CHRISTIAN COLOMA, DAISY MILLER,** and others at HP in exchange for referring Medicare beneficiaries to HP.

<u>**OVERT ACTS**</u>

In furtherance of the conspiracy, and to accomplish its objects and purpose, at least one of the conspirators committed and caused to be committed in the Southern District of Florida at least one of the following overt acts, among others:

1.      In or around winter 2006, **DAISY MILLER** met with a Patient Broker and discussed paying kickbacks and bribes in return for referring patients.

2.      In or around April 2007, **MICHELE PETRIE** met with a Patient Broker and discussed paying kickbacks and bribes in return for referring patients.

3.      On or about December 27, 2007, a fraudulent invoice was received by **CHRISTIAN COLOMA** from a Patient Broker, Keith Humes, using the company name Team Placement Consulting Inc.

4.      On or about February 5, 2008, a check numbered 11000 in the approximate amount of $15,000 was written from HP's corporate bank account by **KAREN KALLEN-ZURY** to Team Placement Consulting Inc., c/o Keith Humes.

5.      On or about March 4, 2008, a check numbered 11063 in the approximate amount of $15,000 was written from HP's corporate bank account by **KAREN KALLEN-ZURY** to Team Placement Consulting Inc., c/o Keith Humes.

6.      On or about March 25, 2008, a check numbered 11111 in the approximate amount of $2,500 was written from HP's corporate bank account by **KAREN KALLEN-ZURY** to Jean Luc Veraguas, a Patient Broker.

7.      On or about April 22, 2008, a check numbered 11175 in the approximate amount of $4,800 was written from HP's corporate bank account by **KAREN KALLEN-ZURY** to Jean Luc Veraguas, a Patient Broker.

8.      On or about May 20, 2008, a check numbered 11251 in the approximate amount of $3,500 was written from HP's corporate bank account by **KAREN KALLEN-ZURY** to Jean Luc Veraguas, a Patient Broker.

9.      On or about November 5, 2007, Team Placement Consulting Inc. caused a wire payment of $1,000 to be transmitted to **GLORIA HIMMONS**, a Patient Broker.

10.     On or about February 8, 2008, Team Placement Consulting Inc. caused a wire payment of $2,000 to be transmitted to **GLORIA HIMMONS**, a Patient Broker.

All in violation of Title 18, United States Code, Section 371.

**COUNTS 10-14**
**Payment of Kickbacks in Connection with a Federal Health Care Benefit Program**
**(42 U.S.C. § 1320a-7b(b)(2)(A))**

1.      Paragraphs 1 through 19 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.      On or about the dates enumerated below, in Miami-Dade and Broward Counties, in Southern District of Florida and elsewhere, defendants,

**KAREN KALLEN-ZURY**
**and**
**CHRISTIAN COLOMA,**

did knowingly and willfully offer and pay remuneration, that is, kickbacks and bribes, directly and indirectly, overtly and covertly, in the form of checks, to any person to induce such person to refer an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part under a Federal health care program, that is, Medicare, as set forth below:

| Count | Approximate Date of Payment | Amount | Description |
|---|---|---|---|
| 10 | February 5, 2008 | $15,000 | Check #11000 from Hollywood Pavilion, LLC, to Team Placement Consulting Inc. (c/o Keith Humes) |
| 11 | March 4, 2008 | $15,000 | Check #11063 from Hollywood Pavilion, LLC, to Team Placement Consulting Inc. (c/o Keith Humes) |
| 12 | March 25, 2008 | $2,500 | Check #11111 from Hollywood Pavilion, LLC, to Jean Luc Veraguas |
| 13 | April 22, 2008 | $4,800 | Check #11175 from Hollywood Pavilion, LLC, to Jean Luc Veraguas |
| 14 | May 20, 2008 | $3,500 | Check #11251 from Hollywood Pavilion, LLC, to Jean Luc Veraguas |

19

In violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A) and Title 18, United States Code, Section 2.

## COUNTS 15-16
**Receipt of Kickbacks in Connection with a Federal Health Care Benefit Program**
**(42 U.S.C. § 1320a-7b(b)(1)(A))**

1.      Paragraphs 1 through 19 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.      On or about the dates enumerated below, in Miami-Dade and Broward Counties, in Southern District of Florida and elsewhere, defendant,

## GLORIA HIMMONS,

did knowingly and willfully solicit and receive remuneration, that is, kickbacks and bribes, directly and indirectly, overtly and covertly, in the form of wire payments, in return for referring an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part under a Federal health care program, that is, Medicare, as set forth below:

| Count | Approximate Date of Payment | Amount | Description |
|-------|------------------------------|--------|-------------|
| 15 | November 5, 2007 | $1,000 | Wire payment of $1,000 from Team Placement Consulting Inc. to **GLORIA HIMMONS** |
| 16 | February 8, 2008 | $2,000 | Wire payment of $2,000 from Team Placement Consulting Inc. to **GLORIA HIMMONS** |

In violation of Title 42, United States Code, Section 1320a-7b(b)(1)(A) and Title 18, United States Code, Section 2.

## FORFEITURE
### (U.S.C. §§ 981, 982)

1.    All the preceding paragraphs of this Indictment are realleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of America of certain property in which **KAREN KALLEN-ZURY, CHRISTIAN COLOMA, DAISY MILLER, MICHELE PETRIE,** and **GLORIA HIMMONS** have an interest.

2.    Upon conviction of either Count 1 or any Count of Counts 7 through 16 as alleged in this Indictment, the defendants, **KAREN KALLEN-ZURY, CHRISTIAN COLOMA, DAISY MILLER, MICHELE PETRIE, and GLORIA HIMMONS** shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense pursuant to Title 18, United States Code, Section 982(a)(7).

3.    Upon conviction of any Count of Counts 2-6, as alleged in this Indictment, the defendant, **KAREN KALLEN-ZURY, DAISY MILLER,** and **MICHELE PETRIE** shall forfeit to the United States any property which constitutes or is derived from proceeds of the offense pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

4.    The property which is subject to forfeiture includes, but is not limited to, the sum of at least $39 million, which represents the gross proceeds of the fraud perpetrated by **KAREN KALLEN-ZURY, CHRISTIAN COLOMA, DAISY MILLER, MICHELE PETRIE,** and **GLORIA HIMMONS.** This sum may be sought as a money judgment.

5.    If any of the property described above, as a result of any act or omission of the defendants:

    a.  cannot be located upon the exercise of due diligence;

    b.  has been transferred or sold to, or deposited with, a third party;

    c.  has been placed beyond the jurisdiction of the court;

    d.  has been substantially diminished in value; or

    e.  has been commingled with other property which cannot be divided without difficulty,  the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1).

All pursuant to Title 18, United States Code, Section 982(a)(7), Title 18, Unites States Code, Section 981(a)(1)(C), as incorporated by Title 28, United States Code, Section 2461(c), and the procedures outlined in Title 21, United States Code, Section 853.

A TRUE BILL

FOREPERSON

*C. N. C., Chief, Crim Div.*
_____
WIFREDO A. FERRER
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

_____
ROBERT A. ZINK
TRIAL ATTORNEY
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

UNITED STATES OF AMERICA                    CASE NO. _____

vs.

KAREN KALLEN-ZURY, et al.,                   **CERTIFICATE OF TRIAL ATTORNEY\***

_____/         **Superseding Case Information:**
                                   Defendants.

**Court Division:** (Select One)          New Defendant(s)          Yes _____   No _____
                                          Number of New Defendants      _____
_X_   Miami    ____   Key West           Total number of counts        _____
____   FTL      ____   WPB       ____ FTP

        I do hereby certify that:

        1.    I have carefully considered the allegations of the indictment, the number of defendants, the number of
              probable witnesses and the legal complexities of the Indictment/Information attached hereto.

        2.    I am aware that the information supplied on this statement will be relied upon by the Judges of this
              Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act,
              Title 28 U.S.C. Section 3161.

        3.    Interpreter:     (Yes or No)      __No__
              List language and/or dialect    _____

        4.    This case will take    _60_   days for the parties to try.

        5.    Please check appropriate category and type of offense listed below:

              (Check only one)                              (Check only one)
              I      0  to  5 days        _____          Petty         _____
              II     6  to 10 days        _____          Minor         _____
              III    11 to 20 days        _____          Misdem.       _____
              IV     21 to 60 days        __X_____          Felony        __X_____
              V      61 days and over
        6.    Has this case been previously filed in this District Court?  (Yes or No)   __No__
        If yes:
        Judge: _____    Case No. _____
        (Attach copy of dispositive order)
        Has a complaint been filed in this matter?     (Yes or No)    __No__
        If yes:
        Magistrate Case No.                   _____
        Related Miscellaneous numbers:        _____
        Defendant(s) in federal custody as of _____
        Defendant(s) in state custody as of   _____
        Rule 20 from the    _____    District of _____

        Is this a potential death penalty case? (Yes or No)     __No__

        7.    Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior
              to  October 14, 2003?    _____  Yes    __X____  No

        8.    Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior
              to September 1, 2007?   _____  Yes    __X____  No

                                          _____
                                          ROBERT A. ZINK
                                          TRIAL ATTORNEY
                                          Special Florida Bar No.A5501735

\*Penalty Sheet(s) attached

                                                                              REV 4/8/08

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: **KAREN KALLEN-ZURY**

**Case No**:

Count #: 1

Conspiracy to Commit Health Care Fraud and Wire Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty**: Twenty (20) years' imprisonment

Counts #: 2-6

Wire Fraud

Title 18, United States Code, Section 1343

**\*Max. Penalty:**  Twenty (20) years' imprisonment as to each count

Counts #: 7-8

Health Care Fraud

Title 18, United States Code, Section 1347

**\*Max. Penalty:**  Ten (10) years' imprisonment as to each count

Count #: 9

Conspiracy to Defraud the United States and to Pay and Receive Kickbacks in Connection with a Federal Health Care Benefit Program

Title 18, United States Code, Section 371

**\*Max. Penalty:**  Five (5) years' imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name: KAREN KALLEN-ZURY**

**Case No:**

Counts #: 10-14

Payment of Kickbacks in Connection with a Federal Health Care Benefit Program

Title 42, United States Code, Section 1320a-7b(b)(2)(A)

**\* Max. Penalty**: Five (5) years' imprisonment as to each count

Counts #: 15-16

Receipt of Kickbacks in Connection with a Federal Health Care Benefit Program

Title 42, United States Code, Section 1320a-7b(b)(1)(A)

**\*Max. Penalty:** Five (5) years' imprisonment as to each count

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: **CHRISTIAN COLOMA**

**Case No**:

Count #: 9

Conspiracy to Defraud the United States and to Pay and Receive Kickbacks in Connection with a Federal Health Care Benefit Program

Title 18, United States Code, Section 371

**\*Max. Penalty:** Five (5) years' imprisonment

Counts #: 10-14

Payment of Kickbacks in Connection with a Federal Health Care Benefit Program

Title 42, United States Code, Section 1320a-7b(b)(2)(A)

**\*Max. Penalty:** Five (5) years' imprisonment as to each count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

<u>PENALTY SHEET</u>

**Defendant's Name**: **DAISY MILLER**

**Case No**:

Count #: 1

Conspiracy to Commit Health Care Fraud and Wire Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty**: Twenty (20) years' imprisonment

Counts #: 2-6

Wire Fraud

Title 18, United States Code, Section 1343

**\* Max. Penalty**: Twenty (20) years' imprisonment as to each count

Counts #: 7-8

Health Care Fraud

Title 18, United States Code, Section 1347

**\*Max. Penalty**: Ten (10) years' imprisonment as to each count

Count #: 9

Conspiracy to Defraud the United States and to Pay and Receive Kickbacks in Connection with a Federal Health Care Benefit Program

Title 18, United States Code, Section 371

**\*Max. Penalty**: Five (5) years' imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:** **MICHELE PETRIE**

**Case No:**

Count  #: 1

Conspiracy to Commit Health Care Fraud and Wire Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty**: Twenty (20) years' imprisonment

Counts # 2-6

Wire Fraud

Title 18, United States Code, Section 1343

**\* Max. Penalty**: Twenty (20) years' imprisonment as to each count

Count  #: 9

Conspiracy to Defraud the United States and to Pay and Receive Kickbacks in Connection with a Federal Health Care Benefit Program

Title 18, United States Code, Section 371

**\*Max. Penalty:** Five (5) years' imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: **GLORIA HIMMONS**

**Case No**:

Count #: 9

Conspiracy to Defraud the United States and to Pay and Receive Kickbacks  in Connection with a Federal Health Care Benefit Program

Title 18, United States Code, Section 371

**\*Max. Penalty**:  Five (5) years' imprisonment

Counts #: 15-16

Receipt of Kickbacks in Connection with a Federal Health Care Benefit Program

Title 42, United States Code, Section 1320a-7b(b)(2)(A)

**\*Max. Penalty**:  Five (5) years' imprisonment as to each count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**